JOSEPH F. DARLING, Appellant, v. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondents.

*City — liability of, to one slipping on ice on a sidewalk — negligence — when a question for the jury.*

This action was brought to recover damages for an injury sustained by the plaintiff, by reason of his slipping upon some ice, while passing along a sidewalk in the city of New York, at about seven o'clock in the evening.   The ice was formed by the freezing of water running from a conductor which emptied its contents close to a house the water running thence across the sidewalk to the gutter, and it had been accustomed to form in this way, from time to time, for several years. The night was dark and the ice was covered by a light fall of snow.   The plaintiff had seen the ice there before, but there was no evidence showing that his attention was called to it at the time of slipping and he was not then thinking about it.

*Held*, that the question of the defendant's negligence and of the plaintiff's contributory negligence should have been submitted to the jury, and that it was error to direct a nonsuit.

Appeal from a judgment in favor of the defendant, entered upon a dismissal of the complaint at the circuit.

*Henry E. Davies*, for the appellant.

*Charles Miller*, for the respondents.

Brady, P. J.:

This action was brought to recover damages for the injury sus‍tained by the plaintiff, by falling on the ice near 4 Neilson place, in this city.   It appears that the plaintiff, after his dinner, and about seven o'clock, went from his house to purchase an evening paper, and in passing along the street slipped on some ice and fell, the fall causing the injury complained of.   It appears that the ice was formed by the freezing of water that ran from the roof of an adjoining house through a leader or conductor, emptying its contents on the inner edge of the sidewalk and flowing thence across the sidewalk to the gutter.

In very cold weather the water froze, leaving a bed of ice on the

sidewalk five or six inches thick at the inner edge, and flattening out to a thin surface as it extended to the outer edge. On the night in question it was dark, and the ice was covered with a light fall of snow and sleet, which had fallen during the day. The street had been in this condition from time to time in bad weather for several years. The plaintiff had seen the ice there before and considered it a dangerous place, but there is no evidence showing that his attention was called to it just before slipping upon it, and it may be questionable whether he saw it within two or three hours previous to the time at which the accident occurred. It is quite clear that at the time he stepped upon the ice, he was not thinking about it, and his attention was not occupied in that regard. The condition of the street was such as to justify the presumption of notice to. the city authorities, whose duty it is to keep the public streets in. such condition that they may be safely traversed by day and by night, or perhaps this was one of the questions which the defend-ants had the right to ask the jury to pass upon, as a preliminary to the success of the plaintiff, if his case were made out in all other respects.

Although the rule to be deduced from an examination of the authorities, bearing upon the question of negligence in this and. kindred cases, would seem to impose upon the plaintiff the obli-gation of showing that he was free from negligence, and that all the physical and intellectual power which God and nature had given him should be continuously exercised to secure his rights, yet there are constant distinctions and many refinements of the rules which govern this particular subject, designed to afford to injured persons a remedy for the wrongs done them. The plaintiff and his rights are not so controlled by the authorities, that he could be properly restrained from presenting his case to the consideration of the jury. That he should have gone out of his house and crossed this particular locality for the purpose of pur-chasing a newspaper, a design lawful in itself, did not deprive him of the right to demand from the city authorities compensation for injuries, which, if they had done their duty, could by no pos-sibility have occurred.

It was said in the case of *Evans* v. *City of Utica* (69 N. Y., 166), a case somewhat similar to this, " assuming that he was notified,.

the inference by no means follows that the plaintiff was negligent." And further, "nor is there any ground for claiming that the danger of passing over the ice was so apparent that the plaintiff had no right to proceed after he discovered the condition of the walk."

And in the case of *Griscoll* v. *The Mayor* (11 Hun, 102), it was said : "That the plaintiff knew of the existence of the hole in which she stepped is reasonably free from doubt; and if she had, at the time, her mind upon it, the accident would probably have been avoided ; but it is probable, from the evidence, that her attention was engrossed by the business she had left her residence to transact, and without, at the time, thinking of this hole, accidentally stepped into it, and from the fall produced by doing so received the injury of which she died."

It is further said : "Her instinctive inclination to protect herself against the risk of injury would have induced her to have avoided this place if she had noticed it, as she was approaching its vicinity ; for that reason it may be assumed that her mind was otherwise employed, and upon that circumstance the charge of negligence must be predicated, if it can be sustained at all. It was the duty of the defendant to keep the walks in such a condition that they could be safely used by persons reasonably engrossed in their own pursuits. Even the most prudent will sometimes be incapable, by the pressure of their cares, from avoiding that condition. Indeed, it is quite common to find careful people in just that state of mind. It naturally results from the subjects employing their attention, and their confidence in their ability at the same time to secure their safety, and cannot be held to be unequivocal evidence of the want of care." (See, also, *Todd* v. *The City of Troy*, 61 N. Y., 506.)

The plaintiff, on his cross-examination, was asked whether he noticed the ice at the time of the accident. His answer was that he did not ; that he hadn't it in his mind. He was asked if he noticed its condition at that time. He said there was always ice there ; he thought he noticed there was ice there at that time.

The cases to which reference has been made, we think, are sufficiently distinctive to be applicable to this case, and to require that a new trial should be had, in order that the question of the plain-

tiff's negligence may be submitted to the jury on such evidence as may be furnished.

Whether, even if the plaintiff knew of the existence of the ice, he was not justified in pursuing his way, in attempting to cross it, exercising ordinary care and prudence, would necessarily enter into the consideration of the question of negligence, keeping in view, as should be done, the obligation of the city to see to it that the walk is in such condition that it may be safely traversed by day and night.

If the plaintiff would not be justified in stepping upon it, in the expectation that it might be safely crossed in that way, it would be necessary for him to leave the sidewalk and go into the street and walk around the obstruction or impediment, a duty which is not yet imposed upon a citizen, that I am aware of, by any reported cases, although the general doctrines in reference to negligence seem to impose upon the wayfarer a predominance of duty and of care.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

INGALLS and DANIELS, JJ., concurred.

Judgment reversed; new trial granted, with costs to abide event.